UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
GENARO PENA,                                    :
                                                :
                          Plaintiff,            :
                                                :
              -against-                         :        **REPORT AND**
                                                :        **RECOMMENDATION**
SUPER ECONOMIC ONE WAY                          :        1:20-CV-03060 (MKB)(PK)
SUPERMARKET CORP. and                           :
EDUARDO LEONARDO,                               :
                                                :
                          Defendants.           :
                                                :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

On July 9, 2020, Plaintiff Genaro Pena ("Plaintiff") commenced an action against Super

Economic One Way Supermarket Corp. ("Super Economic") and Eduardo Leonardo ("Leonardo,"

and collectively, "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

("FLSA") and the New York Labor Law, N.Y. Lab. L. § 650, *et seq.* ("NYLL"). (Compl., Dkt. 1.)

Before the undersigned on referral from the Honorable Margo K. Brodie is Plaintiff's Motion

for Default Judgment against Defendants ("Motion"). (Dkt. 11; Order dated Feb. 9, 2021.) For the

reasons set forth below, the undersigned respectfully recommends that the Motion be granted.

## BACKGROUND

### I.    Factual History

The following facts are taken from the Complaint and the Declaration of Genaro Pena ("Pena

Decl.," Dkt 13-4), and are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577

F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's

factual allegations as true and draw all reasonable inferences in its favor).

Super Economic a New York corporation with its principal place of business at 104-21

Glenwood Road, Brooklyn, New York. (Compl. ¶ 5.) Super Economic "has been, and continues to

be, an employer engaged in interstate commerce…within the meaning of the FLSA." (*Id.* ¶ 6.) Super Economic has "had gross annual revenues in excess of $500,000.00" and has employed individuals who handle "goods and materials produced in interstate commerce." (*Id.* ¶¶ 7-8.)

Defendant Leonardo is the "owner or part owner and principal" of Super Economic. (*Id.* ¶ 9.) While Plaintiff was employed with Super Economic, Leonardo was involved in the "day-to-day operations" and "played an active role in managing" the company. (*Id.* ¶ 10.) Leonardo maintained Super Economic's records, "hired Mr. Pena and set his pay and schedule, supervised him on a daily basis, and paid him each week." (*Id.* ¶ 11; Pena Decl. ¶ 9.)

Plaintiff started working at Super Economic in 2012 as a "deli man," and also received deliveries and stocked goods. (Compl. ¶¶ 21-22, Pena Decl. ¶ 8.) Plaintiff was continuously employed by Super Economic from 2012 through June 2020, except for three months in early 2016 when he was on medical leave. (Pena Decl. at ¶ 7.) Plaintiff stopped working for Super Economic on June 23, 2020. (*Id.*)

From the beginning of his employment until approximately mid-March 2020, for roughly the first two weeks of every month Plaintiff worked seven days a week. (Compl. ¶ 26; Pena Decl. ¶ 11.) Plaintiff then worked six days a week for the remainder of the month, with Sundays off. (Compl. ¶ 26; Pena Decl. ¶ 11.) Plaintiff worked eleven-hour shifts from Monday through Saturday, and six hours on Sundays. (Compl. ¶ 27; Pena Decl. ¶ 13.) Plaintiff therefore worked either 66 or 72 hours per week, depending on the week. (Compl. ¶ 28; Pena Decl. ¶ 14.)

From mid-March through June 2020, Plaintiff worked seven days each week for a total of 72 hours per week. (Compl. ¶ 29; Pena Decl. ¶ 12.)

Plaintiff was paid $100 per day regardless of the number of hours he worked. (Compl. ¶¶ 31-33; Pena Decl. ¶ 17-19.) Plaintiff was paid by check for one week per month, and cash for the remaining weeks. (Compl. ¶ 36; Pena Decl. ¶ 20.)

2

Defendants did not "provide a time clock, sign in sheet, or any other method for employees to track their time worked." (Compl. ¶ 30.) Plaintiff did not receive overtime wages for the work he performed above forty hours per week or spread of hours compensation for shifts lasting over ten hours. (Compl. at ¶ 38; Pena Decl. at ¶ 24.) When Plaintiff asked Leonardo about overtime, he responded "I do not pay that." (Compl. ¶ 40.)

Defendants did not provide Plaintiff with a written notice when he was hired, detailing Plaintiff's rate of pay, designated pay days, and Defendants' contact information, in his primary language of Spanish. (*Id.* ¶ 42; Pena Decl. ¶ 25.) Similarly, Plaintiff did not receive wage statements that included information regarding his compensation and number of hours worked along with his weekly pay. (Compl. ¶¶ 37, 43; Pena Decl. ¶ 25).

## II.    Procedural Background

Plaintiff filed the Complaint on July 9, 2020. (Dkt. 1.) Plaintiff asserts five causes of action: (1) violation of the NYLL's minimum wage provision (*Id.* ¶¶ 52-56); (2) violation of the FLSA's overtime compensation provisions (*Id.* ¶¶ 57-62); (3) violation of the NYLL's overtime compensation provision (*Id.* ¶¶ 63-67); (4) violation of the NYLL's spread of hours provisions (*Id.* ¶¶ 68-72); (5) violation of the New York State Wage Theft Prevention Act (*Id.* ¶¶ 73-78).

Plaintiff served a Summons and copy of the Complaint on Super Economic via the New York Secretary of State on July 21, 2020. (Dkts. 6, 13-2.) Plaintiff served a Summons and copy of the Complaint on Leonardo by hand delivering it to him personally at his place of business on July 29, 2020. (Dkts. 7, 13-2.)

After Defendants did not answer or otherwise respond to the Complaint, Plaintiff requested a certificate of default, and the Clerk entered default against Defendants on October 22, 2020. (Dkts. 8, 9.) Plaintiff then filed the Motion on February 8, 2021. (Dkt. 11.)

In support of the Motion, Plaintiff also submitted his declaration (Dkt. 13-4), the Declaration

of David Stein, Esq. in Support of Motion for Default Judgment ("Stein Decl.," Dkt. 13), and the

Memorandum of Law in Support of Plaintiff's Motion for Default Judgment ("Mem. of Law," Dkt.

12). Plaintiff served copies of the Motion and the accompanying papers on Defendants by mail on

February 8, 2021. (Motion at 2.)

Plaintiff's Counsel's Certificate of Service filed with the Motion stated that Leonardo had been

served at 104-21 Glenwood Road, Brooklyn, NY 11236. (*See Id.*) Because that is a business address,

Plaintiff was directed to mail a copy of the Motion to Leonardo's last known residential address, in

compliance with Local Civ. R. 55.2(c). (Order dated August 6, 2021.) Plaintiff filed a supplemental

declaration of service of the Motion for Default Judgment on Leonardo on August 13, 2021 indicating

that the Motion was sent to Leonardo's last known residence. (Dkt. 14.)

## DISCUSSION

### I.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a

default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of

Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for

an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff

is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty.*

*Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A plaintiff must take several steps before the

court will grant default judgment. The plaintiff must demonstrate proper service of the summons and

complaint. *See Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL

5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The court "may first assure itself that it has personal

jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d

Cir. 2011) (internal quotations omitted). The plaintiff must establish compliance with the procedural

requirements of Local Civ. Rules 7.1 and 55.2.

The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84. "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

In the context of a motion for default judgment on FLSA and NYLL claims, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct." (quotations, citations, and alterations omitted)).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established ...." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.     Jurisdiction

### A.     Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

### B.    Service on the Defendants

Plaintiff properly served Super Economic by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State.  *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B).  (Dkts. 6, 13-2.)  Plaintiff properly served Defendant Leonardo by delivering a copy of the Summons and Complaint to him at Super Economic on July 29, 2020.  Fed R. Civ. P. 4(e)(2)(A).  (Dkts. 7, 13-2.)

### C.    Personal Jurisdiction

"Serving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A).)

New York State has general jurisdiction over corporations formed under its laws and operating within the state.  *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).  Because Super Economic is a New York corporation operating within New York state and was properly served with the Summons and Complaint, the Court has personal jurisdiction over it.

New York has general jurisdiction over its residents.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016).  Leonardo's last known residence is located in New York.  (*See* Dkt. 14.)  New York also has specific jurisdiction over individuals who "'transact[] any business within the state' so long as 'the cause of action arises from the transaction.'"  *Francis*, 2018 WL 4292171 at *3 (quoting *Licci ex rel. Licci*, 673 F.3d at 60).  Leonardo is the "owner or part owner and principal" of Super Economic, which transacts business in New York.  (Compl. ¶ 9.) The Court therefore has personal jurisdiction over Leonardo.

### III.    Procedural Compliance with Local Civil Rules 7.1 and 55.2

Plaintiff has demonstrated that he has taken the required procedural steps to provide proper notice to the defaulting Defendants.  Along with his Motion, Plaintiff included a notice of motion (Dkt. 10, Local Civ. R. 7.1(a)(1)), a memorandum of law (Mem. of Law, Local Civ. R. 7.1(a)(2)), a copy of the Clerk's certificate of default (Dkt. 13-3, Local Civ. R. 55.2(b)(1)), a copy of the claim (Dkt. 13-1, Local Civ. R. 55.2(b)(2)), proof of service of the claim (Dkt. 13-2, Local Civ. R. 55.1(b)(3)), a proposed judgment (Dkt. 11-1, Local Civ. R. 55.2(b)(3)), proof of mailing the Motion to Defendants (Motion at 2, Local Civ. R. 55.2(c)); and the Supplemental Affidavit of Service to Leonardo's last known residential address (Dkt. 14, Local Civ. R. 55.2(c).)  Although Plaintiff did not submit proof that Defendant Leonardo is not on active military duty as part of the Motion, he did submit such proof with his certificate of service.  (Dkt. 7.)  This is sufficient to satisfy Local Civil Rule 55.1(b)(1). Accordingly, Plaintiff complied with the procedural requirements for a default judgment.

### IV.    Liability

#### A.    Statute of Limitations

The FLSA and the NYLL have different statutes of limitations.  Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "When a defendant defaults, the violation is considered 'willful' and the three year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 9-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 9-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)).  "The statute of limitations starts to run when the employee begins to work for the employer." *Id.*  The NYLL's statute of limitations is six years.  NYLL § 198(3).

Plaintiff commenced this action on July 9, 2020.  (Dkt. 1.)  Because Defendants defaulted, the three-year statute of limitations applies to Plaintiff's FLSA claims, and he may recover under the FLSA

for any claims that accrued starting on July 9, 2017.  Plaintiff may recover under the NYLL for any claims that accrued starting on July 9, 2014.

### B.    Employment Relationship under the FLSA

The FLSA is to be "construed [ ] liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotation and citations omitted).  To plead a cause of action under the FLSA, a plaintiff must establish that: (1) defendants are employers subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Rowe v. CC Rest. & Bakery, Inc.,* No. 17-cv-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).  Courts in the Second Circuit have "treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).

### 1.    <u>Whether Defendants are Employers</u>

Plaintiff argues that both Defendants are employers within the meaning of the FLSA.  (*See* Mem. of Law at 2; Compl. ¶ 6.)  The FLSA broadly describes an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013).

The undersigned considers separately whether Defendants Super Economic and Leonardo are employers.  *See Loo v. I.M.E. Rest., Inc.,* No. 17-CV-02558 (ARR)(RER), 2018 WL 4119234, at *4 (E.D.N.Y. Aug. 29, 2018) ("A single employee can have multiple employers under the FLSA, and an employer can be held liable even if he was not personally complicit in FLSA violations." (quotation

and citation omitted)).

### a)    Super Economic

A defendant is an employer under the FLSA if it meets the criteria for either enterprise or individual coverage. *See Rowe*, 2019 WL 4395158, at *4. The enterprise coverage test considers whether the employer has employees engaged in commerce or in the production of goods for commerce, "or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and ... whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Even local activities may meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (*quoting Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)). The individual coverage test considers the "employment actions" of the plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Rowe,* 2019 WL 4395158, at *4.

The Complaint alleges that Super Economic "has been, and continues to be, an employer engaged in interstate commerce … within the meaning of the FLSA." (Compl. ¶ 6.) It further alleges that Super Economic has "had gross annual revenues in excess of $500,000.00" and has employed individuals who handle "goods and materials produced in interstate commerce." (Compl. ¶¶ 7-8.) Although these allegations merely repeat the statutory elements, they are sufficient. *Huerta v. Victoria Bakery*, No. 10-CV-4754 (RJD)(JO), 2012 WL 1107655, *2 (E.D.N.Y. Mar. 30, 2012) (court can "infer[ ] the requisite interstate commerce connection under [a] sensible approach"). Given Super Economics' annual sales, it can be inferred that some of the materials sold in the supermarket

originated in interstate commerce. *Id.* Accordingly, the enterprise coverage test is satisfied, and Super Economic is an employer within the meaning of the FLSA. *See Martinez v. New 168 Supermarket LLC*, No. 19-CV-4526 (CBA)(SMG), 2020 WL 5260579, at *2-3 (E.D.N.Y. Aug. 19, 2020), *R&R adopted*, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020) (concluding that defendant supermarket with over $500,000 in annual sales was an employer within the meaning of the FLSA "because it is logical to infer that at least some of a grocery store's products and produce would have originated outside of New York") (internal citations omitted).

### b)    Leonardo

"The underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees ...." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (per curiam). "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. The analysis of whether an individual is an "employer" is also guided by the factors the Second Circuit set forth in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984). *Irizarry*, 722 F.3d at 110. The factors that the Court may consider are "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Carter*, 735 F.2d at 12 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).

The FLSA "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections

of the FLSA, since such limitations on control 'do not diminish the significance of its existence.'" *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982)) (alteration omitted).

Plaintiff alleges Defendant Leonardo was the "owner or part owner and principal" of Super Economic. (Compl. ¶ 9.) Additionally, Defendant Leonardo was involved in the "day-to-day operations" and "played an active role in managing" the company. (*Id.* ¶¶ 10-11.) Defendant Leonardo maintained the company's records, "hired [Plaintiff,] set his pay and schedule, supervised him on a daily basis, and paid him each week." (*Id.* ¶ 11.)

Accordingly, the undersigned finds that Defendant Leonardo was Plaintiff's employer.

### 2.       Whether Plaintiff is an Employee

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In addition to the allegations in the Complaint (Compl. ¶¶ 21-23), Plaintiff provided a statement declaring that Defendants employed him to work as a deli man, in addition to occasional work receiving deliveries and stocking. (*Id.* ¶¶ 21-22, Pena Decl. ¶ 8.) Plaintiff is therefore an employee under the FLSA.

### 3.       Whether the Employment Relationship Is Exempted from the FLSA

"Section 13 of the FLSA contains a litany of exemptions to the minimum wage requirement." *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014). For example, "bona fide 'professional' employees, a group that includes employees compensated on a salary basis at a rate of not less than $455.00 per week and whose primary duties require advance knowledge in a field of science or learning" are not covered by the FLSA. *Ghosh v. Neurological Servs. of Queens*, No. 13-CV-1113 (ILG)(CLP), 2015 WL 431807, at *3 (E.D.N.Y. Feb. 3, 2015) (quoting 29 U.S.C. § 213(a)(1)). An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Trucks Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010).

Plaintiff was employed as a deli man. (Compl. ¶¶ 21-22, Pena Decl. ¶ 8.) Such employment is not exempt from the FLSA's coverage. *See generally Fermin*, 93 F. Supp. 3d at 32 (explaining that jobs such as "waiter, kitchen helper/food preparer, cook and dishwasher all constitute non-exempt employment under the FLSA").

### C.    Employment Relationship under the NYLL

To prevail on a NYLL claim, Plaintiff must establish that his employment relationship with Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment." NYLL § 190. "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status).

Because the NYLL's definition of "employer" is coextensive with the FLSA's definition, *Fermin*, 93 F. Supp. 3d at 37, Defendants are Plaintiff's employers within the meaning of the NYLL, and the NYLL applies to the instant dispute.

### D.    Minimum Wage Claims

#### 1.    Applicable Minimum Wage Rates

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206; NYLL § 652. "The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whatever statute provides the highest measure of damages." *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK)(JCF), 2011 WL

2022644, at *3 (S.D.N.Y. May 2, 2011), *R&R adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011); *see also* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . .").

The federal minimum wage has been $7.25 since July 24, 2009. *See* U.S. Dep't of Labor, *History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938-2009*, https://www.dol.gov/agencies/whd/minimum-wage/history/chart (last visited Sept. 7, 2021).

From January 1, 2007 until December 30, 2013, the New York minimum wage was $7.15. From December 31, 2013 until December 30, 2014, the New York minimum wage was $8.00. The New York minimum wage increased to $8.75 on December 31, 2014. From December 31, 2015 until December 30, 2016, the minimum wage was $9.00. Starting on December 31, 2016, the minimum wage in New York City depended on the size of the employer. The minimum wage for "small employers" from December 31, 2016 until December 30, 2017 was $10.50.[1] Starting on December 31, 2017, the minimum wage increased to $12.00. It increased again on December 31, 2018, rising to $13.50. Finally, the minimum wage increased to $15.00 on December 31, 2019. NYLL § 652(1)(a)(ii).

## 2.    Whether Plaintiff Was Paid the Minimum Wage

Plaintiff was paid a flat rate of $100 per day throughout his employment. (Compl. ¶¶ 31-33; Pena Decl. ¶ 17.) "For purposes of determining whether Plaintiff [was] paid the prevailing minimum wage, the Court must determine [his] regular hourly rate of pay." *Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-05303 (DLI)(RER), 2018 WL 9945754, at *4 (E.D.N.Y. Oct. 17, 2018). Under the FLSA, "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for

---

[1] Plaintiff does not allege how many employees worked for Defendants. Plaintiff alleges that Super Economic employed "at least two individuals" handling goods produced in interstate commerce and used the minimum wages applicable to "small employers"—defined as "[e]very employer of ten or less employees," NYLL § 652(1)(a)(ii)—in his damages calculations. (*See* Compl. 8; "Damages Spreadsheet," Dkt. 13-5 at 1-2.)

employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109; *see also* 29 C.F.R. § 778.325. Pursuant to NYLL regulations, the "regular rate" for non-hospitality industry workers[2] paid other than hourly is the worker's total weekly salary divided by the number of hours worked. N.Y.C.R.R. § 142-2.16.

Plaintiff was paid $700 per week for 72 hours on those weeks he worked seven days, for a regular hourly rate of $9.72. (*See* Compl. ¶¶ 27, 28, 31-33; Pena Decl. ¶¶ 11, 12, 17-19.) Plaintiff was paid $600 per week for 66 hours on his six-day workweeks, for a regular hourly rate of $9.09. (*See* Compl. ¶¶ 27, 28, 31-33; Pena Decl. ¶¶ 11, 12, 17-19.) This amount was always above the Federal minimum wage of $7.25 per hour.

As shown in the chart below, however, Plaintiff was paid less than the New York minimum wage on all weeks beginning December 31, 2016:[3]

---

[2] Plaintiff was not employed in the hospitality industry. *See* 12 N.Y.C.R.R. § 146-3.1 ("The term hospitality industry includes any restaurant or hotel…"). *see also Benitez v. Bolla Operating LI Corp.*, 189 A.D.3d 970, 972 (N.Y. App. Div. 2020) (holding that a deli worker is not necessarily covered by the hospitality wage order). Plaintiff does not argue that he is covered by the hospitality wage order and, as discussed below, cites to provisions of the non-hospitality minimum wage regulations. *See* Section IV.F, *infra*.

[3] The court accepts as true that Plaintiff "worked six days (66 hours) in about half the weeks of his employment and seven days (72 hours) in the other half" through mid-March 2020. (*See* Damages Spreadsheet at 1; *see also* Stein Decl. ¶ 15; Pena Decl. ¶¶ 11-12; Compl. ¶¶ 26-27.) Thus, for each time period prior to mid-March 2020, half of the weeks are assigned the pay rate corresponding with the 66-hour schedule and the other half are assigned the pay rate corresponding with the 77-hour schedule.

| Time Period | Days Worked per Week | Hours Per Week | Weekly Wage Paid | New York Minimum Wage | No. of Weeks | Regular Hourly Rate of Pay (Weekly Wage / Hours Per Week) |
|---|---|---|---|---|---|---|
| Jul. 9, 2014 – Dec. 30, 2014 | 7 | 72 | $700.00 | $8.00 | 12 | $9.72 |
| | 6 | 66 | $600.00 | | 12 | $9.09 |
| Dec. 31, 2014 – Dec. 30, 2015 | 7 | 72 | $700.00 | $8.75 | 26 | $9.72 |
| | 6 | 66 | $600.00 | | 26[4] | $9.09 |
| Dec. 31, 2015 | 6 | 11/day | $100/day | $9.00 | 1 Day | $9.09 |
| Jan. 1, 2016 – March. 31, 2016 | Medical Leave | | | | | |
| April 1, 2016 – Dec. 30, 2016 | 7 | 72 | $700.00 | $9.00 | 20 | $9.72 |
| | 6 | 66 | $600.00 | | 19 | $9.09 |
| Dec. 31, 2016 – Dec. 30, 2017 | 7 | 72 | $700.00 | $10.50 | 26 | $9.72 |
| | 6 | 66 | $600.00 | | 26 | $9.09 |
| Dec. 31, 2017 – Dec. 30, 2018 | 7 | 72 | $700.00 | $12.00 | 26 | $9.72 |
| | 6 | 66 | $600.00 | | 26 | $9.09 |
| Dec. 31, 2018 – Dec. 30, 2019 | 7 | 72 | $700.00 | $13.50 | 26 | $9.72 |
| | 6 | 66 | $600.00 | | 26 | $9.09 |
| Dec. 31, 2019 – March 15, 2020 | 7 | 72 | $700.00 | $15.00 | 5[5] | $9.72 |
| | 6 | 66 | $600.00 | | 5 | $9.09 |
| March 16, 2020 – June 23, 2020 | 7 | 72 | $700.00 | $15.00 | 14[6] | $9.72 |

---

[4] Although there were 77 weeks and one day between July 9, 2014 and December 30, 2015, Plaintiff's damages sheet lists a total of 76 weeks.  Because Plaintiff's wages exceeded the minimum wage during this time, the difference is not material for purposes of Plaintiff's minimum wage claims.

[5] Although there were 10 weeks and six days in this period, Plaintiff only seeks damages for five seven-day weeks and five six-day weeks.  (*See* Damages Spreadsheet at 1.)

[6] Although there are 14 weeks and 2 days in this period, Plaintiff only seeks damages for 14 full weeks.  (*See* Damages Spreadsheet at 1.)

Accordingly, the undersigned finds that Defendants violated the NYLL by failing to pay Plaintiff the minimum wage starting December 31, 2016.

### E.    Overtime Claims

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* NYLL §§ 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2). To support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work, *Nakahata*, 723 F.3d at 201. *See also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).

Plaintiff worked more than 40 hours per week regardless of whether he worked six or seven days, except during his medical leave. *See supra.* Plaintiff was entitled to overtime pay for all the weeks he worked. Plaintiff alleged that he was not paid at an overtime rate of one-and-a-half times his regular rate of pay. (Compl. ¶ 38; Pena Decl. ¶ 24.) Plaintiff supported that contention by alleging that he was paid a flat daily rate of $100, regardless of the number of hours worked. (Compl. ¶¶ 31-33; Pena Decl. ¶ 17-19.) When Plaintiff asked Defendant Leonardo about overtime, Leonardo responded "I do not pay that." (Compl. ¶ 40.)

These allegations are sufficient to establish Defendants' liability for failure to pay overtime under both the FLSA and the NYLL. *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM)(RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (plaintiff's sworn statement estimating his schedule and pay established that he worked over 40 hours a week without time-and-a-

half compensation, subjecting defendants to liability under FLSA and NYLL).

**F.    Spread of Hours Claims**

Pursuant to NYLL § 142-2.4, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which … the spread of hours exceeds 10 hours."  The spread of hours is defined as "the interval between the beginning and end of an employee's work day," including "working time plus time off for meals plus intervals off duty."  *Id.* § 142-2.18.  Non-hospitality workers who make more than the minimum wage are not entitled to spread of hours pay.  *See, e.g.*, *Heras v. Metro. Learning Inst., Inc.*, No. 19-CV-2694 (DLI)(RLM), 2021 WL 66288, at *6 (E.D.N.Y. Jan. 7, 2021) (citing *Perez Campos v. Quentin Mkt. Corp.*, 2018 WL 9945754, at *5 (E.D.N.Y. Oct. 17, 2018)).

Plaintiff worked more than ten hours a day, but he "never got paid anything extra for working more than ten hours in a day."  (Pena Decl. ¶ 24; *see* Compl. ¶ 41.)  This allegation is sufficient to establish that Defendants did not comply with New York's spread of hours requirement for the periods that Plaintiff was paid less than minimum wage, *i.e.*, after December 31, 2016.  *See Emily Wu v. Queens Blossom Corp.*, No. 18-CV-1366 (RPK)(RER), 2021 WL 2827309, at *13 (E.D.N.Y. July 7, 2021) (uncontested testimony that plaintiffs worked more than 10 hours per day below the minimum wage entitled them to spread-of-hours pay).

**G.    Wage Statement and Wage Notice Claims**

Plaintiff also alleged violations of NYLL §§ 195(1) and 195(3), the statute's wage notice and statement provisions.  (Compl. ¶¶ 37, 42; Pena Decl. ¶ 25.)

At the time Plaintiff was hired in 2012 and continuing through the statute's revision on December 28, 2014, employers were required to provide employees at the time of hiring and the first day of every February with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and pay schedule in the employee's primary language.  *See* NYLL § 195(1) (effective Apr. 9, 2011 through

Dec. 28, 2014).

Section 195(3)'s requirements have remained consistent throughout Plaintiff's employment. That section requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.

Plaintiff alleged that he did not receive any wage notices or wage statements. (Compl. ¶¶ 37, 42, 43; Pena Decl. ¶ 25.) Taking these facts as true, the undersigned finds that Defendants have violated NYLL §§ 195(1) and 195(3).

## V.    Damages

### A.    Minimum Wage

As set forth above, Defendants failed to pay Plaintiff the New York minimum wage between December 31, 2016 and June 23, 2020. In light of the principle that "the law providing the greatest recovery will govern," *Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citation omitted), Plaintiff is entitled to recovery based on the New York minimum wage. Plaintiff's minimum wage damages are calculated by taking the difference between Plaintiff's actual hourly wages and the minimum wage, multiplied by the number of hours worked per week.

| Time Period | Days Worked Per Week | New York Minimum Wage | Hours Per Week | No. of Weeks | Regular Hourly Rate of Pay (Weekly Wage / Hours Per Week) | Difference Between Min. Wage & Regular Hourly Wage | Weekly Underpayments (Difference x Number of Hours) | Total Underpayments (Number of Weeks x Weekly Underpayment) |
|---|---|---|---|---|---|---|---|---|
| Dec. 31, 2016 – Dec. 30, 2017 | 7 | $10.50 | 72 | 26 | $9.72 | $0.78 | $56.16 | $1,460.16 |
| | 6 | | 66 | 26 | $9.09 | $1.41 | $93.06 | $2,419.56 |
| Dec. 31, 2017 – Dec. 30, 2018 | 7 | $12.00 | 72 | 26 | $9.72 | $2.28 | $164.16 | $4,268.16 |
| | 6 | | 66 | 26 | $9.09 | $2.91 | $192.06 | $4,993.56 |
| Dec. 31, 2018 – Dec. 30, 2019 | 7 | $13.50 | 72 | 26 | $9.72 | $3.78 | $272.16 | $7,076.16 |
| | 6 | | 66 | 26 | $9.09 | $4.41 | $291.06 | $7,567.56 |
| Dec. 31, 2019 – March 15, 2020 | 7 | $15.00 | 72 | 5 | $9.72 | $5.28 | $380.16 | $1,900.80 |
| | 6 | $15.00 | 66 | 5 | $9.09 | $5.91 | $390.06 | $1,950.30 |
| March 16, 2020 – June 23, 2020 | 7 | $15.00 | 72 | 14 | $9.72 | $5.28 | $380.16 | $5,322.24 |
| | | | | | | | **Total:** | $36,958.50 |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$36,958.50** in minimum wage damages.[7]

### B.    Overtime

Plaintiff was entitled to overtime for all hours worked over 40 at 1.5 times his regular hourly wage from July 9, 2014 to December 30, 2016, when his regular hourly wage was above the minimum wage, and 1.5 times the minimum wage rate from December 31, 2016 through June 23, 2020, when the minimum wage was higher than Plaintiff's regular hourly wage.  *See Perez Campos*, 2018 WL 9945754, at *7-8 (calculating overtime damages based on regular hourly rate when that rate exceeded the minimum wage and based on minimum wage when regular hourly rate was less than minimum

---

[7] Plaintiff's damages calculation shows a slightly lower amount, $36,938, due to rounding differences.  (*See* Damages Spreadsheet at 1.)

wage).

To avoid double-counting Plaintiff's minimum wage and overtime damages, only the premium over the minimum wage is counted. Plaintiff's overtime damages can be calculated by determining the number of overtime hours each week multiplied by the overtime premium.

The following table sets forth those calculations:

| Time Period | Days Worked Per Week | Hours Per Week | Weeks | Regular Hourly Rate | New York Minimum Wage | Overtime Hours Per Week | Overtime Premium (0.5 x Regular Rate) | Weekly Overtime Underpayments (Overtime Premium x Overtime Hours) | Total Overtime Underpayments (Number of Weeks x Weekly Overtime Underpayment) |
|---|---|---|---|---|---|---|---|---|---|
| July 9, 2014 – Dec. 30, 2014 | 7 | 72 | 12 | $9.72 | $8.00 | 32 | $4.86 | $155.52 | $1,866.24 |
| | 6 | 66 | 12 | $9.09 | | 26 | $4.55 | $118.17 | $1,418.04 |
| Dec. 31, 2014 – Dec. 31, 2015 | 7 | 72 | 26 | $9.72 | $8.75 | 32 | $4.86 | $155.52 | $4,043.52 |
| | 6 | 66 | 26 | $9.09 | | 26 | $4.55 | $118.17 | $3,072.42 |
| Jan. 1, 2016 – March. 31, 2016 | | | | | Medical Leave | | | | |
| April 1, 2016 – Dec. 30, 2016 | 7 | 72 | 20 | $9.72 | $9.00 | 32 | $4.86 | $155.52 | $2,954.88 |
| | 6 | 66 | 19 | $9.09 | | 26 | $4.55 | $118.17 | $2,245.23 |
| Dec. 31, 2016 – Dec. 30, 2017 | 7 | 72 | 26 | $9.72 | $10.50 | 32 | $5.25 | $168.00 | $4,368.00 |
| | 6 | 66 | 26 | $9.09 | | 26 | $5.25 | $136.50 | $3,549.00 |
| Dec. 31, 2017 – Dec. 30, 2018 | 7 | 72 | 26 | $9.72 | $12.00 | 32 | $6.00 | $192.00 | $4,992.00 |
| | 6 | 66 | 26 | $9.09 | | 26 | $6.00 | $156.00 | $4,056.00 |
| Dec. 31, 2018 – Dec. 30, 2019 | 7 | 72 | 26 | $9.72 | $13.50 | 32 | $6.75 | $216.00 | $5,616.00 |
| | 6 | 66 | 26 | $9.09 | | 26.00 | $6.75 | $175.50 | $4,563.00 |
| Dec. 31, 2019 – March 15, 2020 | 7 | 72 | 5 | $9.72 | $15.00 | 32.00 | $7.50 | $240.00 | $1,200.00 |
| | 6 | 66 | 5 | $9.09 | | 26.00 | $7.50 | $195.00 | $975.00 |
| March 16, 2020 – June 23, 2020 | 7 | 72 | 14 | $9.72 | $15.00 | 32.00 | $7.50 | $240.00 | $3,360.00 |
| | | | | | | | **Total:** | | $48,279.33 |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$48,279.33** in unpaid overtime.[8]

### C.    Spread of Hours

As set forth above, for each day on which Plaintiff worked a shift of more than ten hours, Plaintiff was entitled to an additional hour of pay at the minimum wage rate. Plaintiff worked more than ten hours a shift 6 days a week. (Pena Decl. ¶¶ 11-13; *see also* Compl. ¶ 27.) As Plaintiff was paid more the minimum wage prior to December 31, 2016, he is ineligible for spread of hours damages prior to that date. *See Ellis v. Common Wealth Worldwide Chauffuered Transp. of NY, LLC*, No. 10-CV-1741 (DLI)(JO), 2012 WL 1004848, at *8 (E.D.N.Y. Mar. 23, 2012) ("the majority of courts of this circuit that have considered this issue" have found that "by its plain language, the spread of hours statute applies only to employees making minimum wage.") Plaintiff is eligible for spread-of-hours damages from December 31, 2016 until the end of his employment, as follows:

| Period of Time | Number of Weeks | Days Per Week with More than 10 Hours Worked | Minimum Wage | Total Spread of Hours Pay Per Week | Total Per Period |
|---|---|---|---|---|---|
| December 31, 2016 – December 30, 2017 | 52 | 6 | $10.50 | $63.00 | $3,276.00 |
| December 31, 2017 – December 30, 2018 | 52 | 6 | $12.00 | $72.00 | $3,744.00 |
| December 31, 2018 – December 30, 2019 | 52 | 6 | $13.50 | $81.00 | $4,212.00 |
| December 31, 2019 – June 23, 2020 | 25 | 6 | $15.00 | $90.00 | $2,250.00 |
| | | | | **Total:** | $13,482.00 |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$13,482.00** in spread of hours compensation.

### D.    Wage Notice and Wage Statement Damages

---

[8] Plaintiff's overtime calculations are slightly higher, at $48,282.03, due to slight rounding differences.

Plaintiff seeks damages for Defendants' violations of NYLL §§ 195(1) and 195(3).

       1.     *Wage Notice*

Under NYLL § 198(1-b), employees are currently entitled to $50 per workday for violations of NYLL § 195(1), up to a maximum of $5,000, along with costs and attorney's fees. However, the version of Section 198(1-b) in effect when Plaintiff began working for Defendants provided for damages of $50 per workweek up to a statutory maximum of $2,500. *See* NYLL § 198(1-b) (effective Apr. 9, 2011). The increase to the statutory maximum occurred on February 27, 2015, and is not retroactive. *See* NYLL §§ 198(1-b) (effective Feb. 27, 2015); *see also Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI)(CLP), 2017 WL 5033650, at *21 (E.D.N.Y. Sept. 22, 2017) *R&R adopted*, Dkt. Order Oct. 18, 2017 (concluding that the increase in damages under Section 198(1-b) is not retroactive and applying lower statutory threshold to employee hired before February 27, 2015).

Defendants' wage notice violations under § 195(1) occurred under the earlier version of Section 198(1-b), because Plaintiff first started to work for Defendants in 2012 and continued into the limitations period. (*See* Compl. ¶ 21; Pena Decl. ¶ 8.) Because the wage notice violation occurred under the lower statutory limit, and because § 198(1-b) is not retroactive, Plaintiff is only eligible for the statutory maximum of $2,500 for the wage notice violation. Because Plaintiff worked for Defendants for more than 50 weeks, he is entitled to $2,500.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$2,500** in damages under Section 195(1).

       2.     *Wage Statement*

As of February 27, 2015, violations of NYLL § 195(3) incur damages of $250 per workday, for a maximum of $5,000, along with costs and attorney's fees. NYLL § 198(1-d). Plaintiff began working for Defendants before that date, when the maximum amount was lower. However, because a new wage statement violation occurs every pay period in which proper wage statements are not

provided to an employee, Plaintiff is entitled to damages for this higher amount during the time he worked after the effective date of the increase. *See* NYLL § 195(3) (employers must "furnish each employee with a statement with *every* payment of wages…") (emphasis added).

Plaintiff worked for Defendants for more than twenty days after February 27, 2015 and did not receive wage statements during that time. Therefore, he is entitled to the higher statutory limit for that category of damages. *See Martinez*, 2017 WL 5033650, at *21-22 (awarding wage statement damages under revised statute where employment continued after statutory revision and plaintiff did not receive paystubs).

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$5,000** in damages under Section 195(3).

### E.    Liquidated Damages

Plaintiff seeks liquidated damages equal to the total amount of all unpaid wages, which includes minimum wage, overtime, and spread of hours pay. (Mem. of Law at 5.) Under the FLSA and the NYLL, an employee may be entitled to recover liquidated damages equal to the amount owed for unpaid wages. 29 U.S.C. § 216(b); NYLL § 198(1-a). If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages. 29 U.S.C. § 260; *see* NYLL § 198(1-a). Since Defendants did not respond to the Motion, there is no showing of good faith and liquidated damages are appropriate. *See Herrara v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages—that is, liquidated damages under both the NYLL and FLSA. *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). In light of the principle that "the law providing the greatest recovery will

govern," Plaintiffs may be awarded liquidated damages pursuant to the NYLL or the FLSA. *Charvac*, 2015 WL 5475531, at *4 (citation omitted). Liquidated damages are not available for violations of the NYLL wage notice or wage statement provisions. *See* NYLL § 198(1-a), (1-d).

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded liquidated damages for his NYLL minimum wage, overtime, and spread of hours claims in the amount of **$98,719.83.**

### F.    Pre- and Post-Judgment Interest

Although Plaintiff requested prejudgment and post-judgment interest in his Complaint, he did not renew his request for such relief in the Motion. (*See* Compl. at 17; Motion, Mem. of Law.) On September 3, 2021, in response to a Court order, Plaintiff filed a letter stating that he "waives his demand for prejudgment interest." (Dkt. 15.)

Post-judgment interest is mandatory. *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004); *see* 28 U.S.C. § 1961(a) (post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court" and "shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield ... for the calendar week preceding the date of judgment."); *Lamaka v. Russian Desserts Inc.*, No. 18-CV-7354 (ILG)(VMS), 2021 WL 2188280, at *18 (E.D.N.Y. Feb. 12, 2021), *R&R adopted*, 2021 WL 2184870 (E.D.N.Y. May 28, 2021) (awarding post-judgment interest despite plaintiff's failure to request it). Accordingly, the undersigned recommends that Plaintiff be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### G.    Fifteen Percent Increase Penalty if Damages not Paid Within Ninety Days

Plaintiff does not seek an automatic increase of fifteen percent for any unpaid amount of the judgment still pending after ninety days, as provided for at NYLL § 198(4). However, that provision

mandates that "any judgment or court order awarding remedies under this section *shall provide* that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  NYLL § 198(4) (emphasis added); *see also Rodriguez v. Solares Corp.*, No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).  This award is therefore mandatory, regardless of whether Plaintiff requests it or not.

The increase applies only to damages awarded under state law.  *See id.* (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *R&R adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional fifteen percent enhancement to damages awarded under the NYLL).  Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent if Defendants fail to timely satisfy the judgment.

## VI.    Attorneys' Fees and Costs

Prevailing plaintiffs are allowed to recover reasonable attorneys' fees and costs under both the FLSA and the NYLL. *See* 29 U.S.C. § 216(b); NYLL § 663(1).  Plaintiff requests $5,497.50 in fees and costs. (Mem. of Law at 8.)

### A.    Attorneys' Fees

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request.  *Mahoney*, 2016 WL 6585810, at *18.  Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award."  *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation and citation omitted).

"[T]he lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted). "If the Court finds that some of the time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly." *Mister Softee, Inc. v. Konstantakakos*, No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016) (quotation and citation omitted). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make 'an across-the-board reduction or percentage cut, in the amount of hours.'" *Id.* (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 9-CV-451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)). "Inadequate documentation" is another "ground[ ] for reduction of a fee award." *Bercosa Corp.*, 666 F. Supp. 2d at 299 (citation omitted).

### 1. __Hourly Rate__

Plaintiff seeks fees for the work done by his counsel, David Stein and David Nieporent. Plaintiff seeks $400 per hour for Stein. Stein was admitted to the New York bar in 2000 and is a founding partner of Samuel & Stein. (Stein Decl. ¶ 20.) He has "focused [his] practice almost exclusively on wage-and-hour cases since 2008," handling "more than 350 such cases" and trying several cases to verdict. *Id.* Stein elected to charge $125 per hour for tasks that he performed but "that did not require the expertise of a senior partner." (*Id.* ¶ 23.)

Plaintiff seeks $325 per hour for Nieporent. Nieporent is a senior associate at Samuel & Stein with over 20 years' experience and has been a member of the New York bar since 2011. (*Id.* ¶ 21.)

"Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court." (*Id.*)

Some courts have held that the appropriate range for a senior attorney in a labor law case is $300 to $400 per hour, while others have found that $450 is the proper upper limit of the range. *See Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR)(JO), 2020 WL 4783399, at *5 (E.D.N.Y. Aug. 18, 2020). The undersigned finds that $400 per hour is a reasonable rate for an attorney with similar experience to Stein in a routine FLSA default judgment case. *See, Lopez v. Ki Moon Rest. Corp.*, No. 17-CV-6078 (LDH)(RLM), 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021), *R&R adopted*, 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021) (awarding $400 per hour because "Mr. Stein has the requisite experience in this area of the law to justify the higher rate, having handled more than 350 federal wage-and-hour cases and having practiced law for approximately thirty years"). Mr. Stein's reduced rate of $125 per hour for administrative tasks is also reasonable. *See id.* at *3 n.2.

Additionally, given Nieporent's "experience, *i.e.*, skill and expertise," the undersigned finds that $325 per hour is a reasonable rate. *Id.* at *3 ("Regardless of his title, Mr. Nieporent has experience comparable to other attorneys who have been awarded hourly rates above $325 per hour.") (citing cases).

### 2.    Reasonableness of Time Billed

Plaintiff's counsel seeks reimbursement for 14.1 hours of work, including investigating Plaintiff's allegations, preparing and filing the Complaint and the Motion, and engaging in brief settlement attempts with opposing counsel. ("Billing Records," Dkt. 13-6.) The undersigned has reviewed the Billing Records and finds them to be reasonable.

### 3.    Calculating the Recommended Fee Award

As set forth in the chart below, the undersigned calculates the recommended fee award as follows:

| Biller | Rate | Time | Total |
|---|---|---|---|
| Stein | $400 | 5.6 | $2,240.00 |
| | $125 | 0.4 | $50.00 |
| Nieporent | $325 | 8.1 | $2,632.50 |
| | | **Grand Total:** | 4,922.50 |

**B.    Costs**

Plaintiff seeks $575.00 in costs, comprised of $400.00 for filing the Complaint and $175.00 for service of process.  (Dkt. 13-7.)

The undersigned takes judicial notice of the filing fee.  *See Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019) (awarding plaintiff the $400 filing fee after taking judicial notice of it).  Plaintiff submitted invoices to support his requested service costs, which are reasonable.  (Dkt. 13-7 at 3-4; Dkt. 15-1.)

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $575.00 in costs.

**VII.    Joint and Several Liability**

When multiple defendants are found to be a plaintiff's employer, "each [d]efendant is jointly and severally liable under the FLSA and NYLL for any damages awards made in [that] [p]laintiff['s] favor."  *Fermin*, 93 F. Supp. 3d at 37; *see also Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011) (holding that plaintiff's allegations that the individual defendant "was an owner, partner, or manager" of the corporate defendant, "coupled with [d]efendants' default, suffice to … impose joint and several liability on each [defendant] for their respective violations of the wage laws." (quotation and citation omitted)).

Defendants Super Economic and Leonardo were Plaintiff's joint employers for the entire time of his employment.  Accordingly, the undersigned respectfully recommends that Super Economic and Leonardo be found jointly and severally liable for the damages awarded in this action.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motion be granted. The undersigned respectfully recommends that damages be awarded as follows:

- $36,958.50 for minimum wage underpayments;

- $48,279.33 for unpaid overtime;

- $13,482.00 for spread of hours compensation;

- $2,500 for failure to provide wage notices;

- $5,000 for failure to provide wage statements;

- $98,719.83 for liquidated damages;

- $4,922.50 for attorney fees; and

- $575.00 for costs.

The undersigned further respectfully recommends that Plaintiff be granted post-judgment interest at the statutory rate, and a fifteen-percent increase penalty if damages under the NYLL are not paid within ninety days of judgment or the expiration of time to appeal.

Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants forthwith, and file proof of service on the docket by **September 10, 2021**. Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
_____
PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          September 8, 2021